## COURT OF APPEALS.

Moses Lowenberg, plaintiff in error agt. The People of
the State of New York, defendants in error.

Where the term of the *court of general sessions* for the city and county of New
York is continued beyond the time prescribed by statute (2 *R. S.* 217, § 31), by
reason of the *unfinished trial of a case,* commenced during the regular term—
which continuation is provided for by a statute of 1846 (*Laws of* 1846, *p.* 4)—any
prisoners convicted during the term *may be legally sentenced* by the court during
its session for such unfinished trial.

The provision of the Revised Statutes which required that the warrant for the exe-
cution of the *sentence of death,* made out by the court, should *appoint the day* on
which such sentence should be executed, *was repealed by the act of April* 14, 1860.

Where the court, in passing sentence of death under the act of 1860, also *fix the day
for the execution* of the prisoner after the expiration of one year from the date of
his sentence—making his confinement in the state prison at hard labor more than
*thirteen and a half months*—although an *error of the court,* is not such an error
as *entirely vitiates the sentence,* requiring a reversal of the judgment. (Balcom,
J., *dissenting.*)

*It seems,* that the act of 1860 affirms the common law right to execute persons con-
victed of murder in the first degree, by hanging, notwithstanding that act declares
that such person " shall be punished as herein provided," but makes no provision
for the mode of execution.

Where a *juror,* on a trial for murder, was *challenged* for principal cause, on the
ground that he had formed or expressed an opinion as to the guilt or innocence of
the prisoner, and it was established that he had *formed an opinion* " that the
prisoner killed Hoffman" (the deceased), which he had never expressed :

*Held,* that this was not an opinion as to the *guilt or innocence* of the prisoner, as
the prisoner might have killed Hoffman innocently.

*Argued June Term,* 1863 ; *decided October,* 1863.

The term of the court of general sessions, at which the
prisoner was tried and sentenced, was commenced on
Monday the second day of December, 1861, and was con-
tinued until the fourth day of January, 1862, when the
sentence was pronounced. The prisoner was tried and
found guilty by the jury on the 11th day of December,
1861. The trial of one Jefferds was commenced in that
court on the 18th day of that month, and was concluded
by a verdict of guilty on the 24th day of the same month.
On the 28th day of that month the district attorney moved

Lowenberg agt. The People.

that judgment be pronounced upon the prisoner and Jefferds. But the pronouncing of judgment in each case was postponed, at the request of the counsel for the prisoner, until the 4th day of January, 1862.

H. L. CLINTON, *for plaintiff in error*.
N. J. WATERBURY, *for defendants in error*.

BALCOM, J. The prisoner's counsel now insists that the court of general sessions was unlawfully continued, as to the prisoner, beyond the third week in December, 1861. The law fixing the terms of that court, until the year 1846, was, that the same should commence on the first Monday of every month, and might continue and be held until and including Saturday in the third week thereafter. (2 *R. S.* 217, § 31.) But, by chapter two of the Laws of 1846, it was provided that whenever the trial of a cause shall have been commenced in that court, " and the same shall not be concluded before the expiration of the term of said court, it shall be lawful for the said court to continue in session until the conclusion of said trial, and to proceed to judgment, if they shall so deem necessary, in cases where convictions shall be had." (*Laws of* 1846, *p.* 4.) The trial of Jefferds had been commenced and was not concluded until the term prescribed by the statute, prior to 1846, had expired. The court therefore was lawfully continued in session until the fourth day of January, 1862, which was two days before the first day of the January term in that year. And there can be no doubt but that it was lawful for the court to sentence Jefferds on the 4th day of January, 1862; and I am of the opinion it was also lawful for the court to proceed to judgment against the prisoner in this case, on that day. The court then was legally in session, and was authorized to proceed to judgment in cases where convictions were had. It was not restricted to proceeding to judgment in the case on trial at the expiration

of the December term. The language of the statute is too broad and comprehensive to admit of such a restricted construction. It is, that the court may " proceed to judgment, if they shall so deem necessary in cases where convictions shall be had." This authorized the court to pronounce judgment upon any number of prisoners at any time before its final adjournment; for the term was lawfully continued, because the trial of Jefferds was not concluded when it would have expired, if no cause had then been on trial.

It must be presumed that the authors of the law of 1846 knew what every lawyer then knew, to wit, that prisoners were seldom sentenced at the time they were found guilty by the jury, but generally at the close of the term, after all the cases ready for trial had been disposed of. Sentence was sometimes delayed to enable counsel to prepare and engross exceptions, and for other reasons; and during such delays other cases were taken up and tried : and having this knowledge, the legislature would have used different language if the intention had been to restrict the court to pronouncing judgment, after the expiration of the regular term, to the single case on trial when such term expired. It is certain that the court lawfully continued its sittings beyond the third week in December, 1861, if chapter 208 of the laws of 1859 (*Laws of* 1859, *p.* 465) is applicable to it. That act provides that it shall be lawful for " the court of sessions of any county of this state" to continue its sittings at any term thereof so long as it may be necessary, in the opinion of such court, for the dispatch of any business or the determination of any cases that may be pending before such court. The court of general sessions of the peace in and for the city and county of New York is but a court of sessions for the county of New York, and is designated in the act of 1859 by the words " the court of sessions of any county of this state." A court of general sessions of the peace and a court of sessions of any

county are one and the same tribunal.   It is the criminal
court of the county, whether held by the same or different
magistrates.   (*See People* agt. *Powell*, 14 *Abb. R.* 91.)   I
am therefore of opinion that the act of 1859 authorized the
court of general sessions of the city and county of New
York to continue in session until it passed sentence upon
the prisoner in this case.

The prisoner was convicted of murder in the first degree,
and sentenced under the act of April 14, 1860, entitled
"An act in relation to capital punishment and to provide
for the more certain punishment of the crime of murder."
(*Laws of* 1860, *p.* 712.)   The crime was committed after
that act took effect.   But the prisoner's counsel contends
that that act abolished all punishment for murder " of the
first degree."   Section one was as follows : " No crime
hereafter committed, except treason and murder in the first
degree, shall be punished with death in the state of New
York."   By section four it was provided : " Where any
person shall be convicted of any crime punishable with
death, and sentenced to suffer such punishment, he shall at
the same time be sentenced to confinement at hard labor
in the state prison until such punishment of death shall be
inflicted."   Section five declared that " no person so sen-
tenced or imprisoned shall be executed in pursuance of
such sentence within one year from the day on which such
sentence of death shall be passed, nor until the whole
record of the proceedings shall be certified by the clerk of
the court in which the conviction was had, under the seal
thereof, to the governor of the state, nor until a warrant
shall be issued by the governor, under the great seal of
the state, directed to the sheriff of the county in which
the state prison may be situated, commanding the said sen-
tence of death to be carried into execution."   That act
expressly repealed section 25 of that portion of the Revised
Statutes entitled " Of crimes punishable with death," which
declared that the punishment of death shall in all cases be

inflicted by hanging the convict by the neck until he be dead. (See 2 R. S. 659, § 25.) And it amended section one of the same portion of the Revised Statutes so as to read as follows : " Every person who shall hereafter be convicted, first, of treason against the people of this state, or, second, of murder, or, third, of arson in the first degree, as those crimes are respectively declared in this title, shall be punished as herein provided." Provision was made in section 18 of the act of 1860 for the execution of persons, by virtue of the warrant of the governor, who should become insane after being convicted of murder in the first degree, provided they should subsequently become sane. Punishment with death was recognized by section 19 of the same act. And I am of the opinion the Revised Statutes above mentioned, which stated that the warrant for the execution of the sentence of death, made out by the court, should appoint the day on which such sentence should be executed, was repealed by the act of 1860, which provided for the fixing of the time of execution, if ever, by the governor. The designation of the time for executing the sentence by the governor was entirely inconsistent with the appointment of such time in the warrant for the execution of the sentence made out by the court. Hence, conferring authority upon the governor to fix the day for executing the sentence necessarily took away the authority before vested in the court to appoint such day.

It seems to me that the act of 1860 clearly affirms the common law right to execute persons convicted of murder in the first degree. It nowhere professes to abolish the penalty of death for that crime ; and the right to inflict it is recognized in several different sections. The fact that the act so amended a section of the Revised Statutes above quoted, as to declare that persons convicted of murder should be punished as therein provided, and that the section prescribing the mode of taking the lives of persons so convicted was expressly repealed, does not make the com-

mon law mode of inflicting the death penalty inapplicable to cases where that punishment is recognized by such act or the Revised Statutes as amended by that act. The words, " shall be punished as herein provided," in the act of 1860, were applicable so far as that act prescribed the extent and mode of punishment, but no farther. And if the authors of such act intended, by the repeal of the statute declaring that the punishment of death should in all cases be inflicted by hanging the convict by the neck, so to alter the law as to make it impossible ever to inflict the punishment of death upon a murderer, they did not go far enough to make such intention effectual : for they stopped short of abrogating the common law by which the mode of executing murderers had become fixed and certain. That . mode was by hanging the convict by the neck until he was dead, unless he was a slave. This is shown in a very learned opinion delivered by Justice CAMPBELL in the *People* agt. *Doane* (*MS. but soon to be published.*)

The prisoner's counsel challenged Durant as a juror, for principal cause, on the ground that he had formed or expressed an opinion as to the guilt or innocence of the prisoner. But the most that was established against his competency was, that he had formed an opinion that the prisoner killed Hoffman, which he had never expressed. This was not an opinion as to the guilt or innocence of the prisoner. He might have killed Hoffman, and still been innocent of any criminal offence. The court therefore properly overruled the challenge to Durant for principal cause, and as he was not challenged for favor, there was no error in permitting him to sit as a juror in the case. The rule respecting such challenges was correctly stated by BEARDSLEY, J., in *Freeman* agt. *The People* (4 *Denio*, 33). He there said : " Every challenge for principal cause must be for some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court. The truth of the fact alleged, and that alone, is in question ;

its sufficiency as a ground of challenge is conceded by omitting to demur or taking issue on the fact. It is otherwise on a challenge for favor. That must be determined by triers, who are to pass upon the question of actual bias or favor." Within this rule the ground of challenge to Durant was not proved. Before it could be said it was established, the proof must have been that he had formed and expressed an opinion as to the *guilt or innocence* of the prisoner, or at least that he had formed such an opinion. It is clear that the forming of an opinion that the prisoner had done an act necessary to be shown, among others, in order to convict him, was not the forming of an opinion that he was guilty of murder or of any other crime.

The foregoing views lead to the conclusion that the prisoner was lawfully convicted of murder in the first degree. But I am of the opinion the court of sessions erred in adjudging that the prisoner should suffer death on a particular day. The day on which he should be executed, if ever, should have been left for the governor to designate; the proper sentence would have been, that the prisoner suffer death for the crime of murder in the first degree, in killing Samuel Hoffman, at the city of New York, on the 14th day of November, 1861, whereof he has been duly convicted, by being hung by the neck until he be dead, by the sheriff of the county in which he shall be imprisoned, at such place and time after the expiration of one year from the date of his sentence as such sheriff shall be commanded by a warrant issued by the governor under the great seal of the state, and that he be confined in the state prison at hard labor until such punishment of death shall be inflicted.

The court fixed a day for the execution of the prisoner, so he was to be confined in the state prison at hard labor more than thirteen and a half months before he could be executed; when, by the act of 1860, he could be so confined only one year, if the governor should so determine

and issue a warrant for his execution. The supreme court could not lawfully affirm this judgment. Its duty was to reverse it. When the case was before that court the statute was as follows : " If the supreme court shall reverse the judgment rendered, it shall direct a new trial, or that the defendant be absolutely discharged, according to the circumstances of the case." (2 *R. S.* 741, § 24.) The act of 1863 (*Laws of* 1863, *p.* 406), amending this section, was passed after the judgment was pronounced, and therefore *ex post facto* as to this case, and cannot influence our decision in it. We must therefore determine whether, according to the common law, the supreme court should have directed a new trial, or that the defendant be absolutely discharged, according to the circumstances of the case.

In the *King* agt. *Ellis* (5 *Barn. & Cress.* 395), the prisoner was sentenced to be transported for fourteen years, when, according to law, he could only be transported for seven years ; and the court of King's Bench reversed the judgment and discharged the prisoner, holding that there was no ground to send it back to be amended. In the *King* agt. *Bourne and others* (7 *Adol. & Ellis,* 58), it was held, where an erroneous judgment is given by an inferior court on a valid indictment (as by passing sentence of transportation in a case punishable only with death), and the defendant brings error, the appellate court can neither pass the proper sentence nor send back the record to the court below in order that they may do so ; but the judgment must be reversed and the defendant discharged. In *Shepard* agt. *The Commonwealth* (2 *Metcalf,* 419), the prisoner was sentenced to be imprisoned four years, when the limit was three, and the supreme court of Massachusetts reversed the judgment and discharged him. And that court subsequently, in *Christian* agt. *The Commonwealth* (5 *Metcalf,* 530), laid down the following rules, namely : " When a judgment in a criminal case is entire, and a writ of error is brought to reverse it, though it is erroneous in

part only, it must be wholly reversed.   The court, after reversing a judgment in a criminal case, cannot enter such judgment as the court below ought to have entered, nor remit the case to the court below for a new judgment." These rules were approved by BRONSON, Ch. J., in *The People* agt. *Taylor* (3 *Denio*, 91).

' My conclusion is : as the only error the court of sessions committed was in giving a wrong judgment in part against the prisoner, no new trial can be legally granted, and that the judgment must be wholly reversed, and the prisoner discharged.

I regret that I am forced to this conclusion, for it is quite clear that the prisoner is guilty, and will escape just punishment.   But this result cannot be avoided ; for it is for the legislature, and not the courts, to alter the laws in order to prevent the guilty escaping the punishment they deserve.

WRIGHT, J., read an opinion for reversing the judgment and discharging the prisoner, on the ground that there was no punishment for murder in the first degree committed while the act of 1860 was in force.   EMOTT, J., concurred in this opinion.

DENIO, Ch. J., DAVIES, SELDEN, MARVIN and ROSEKRANS, JJ., voted for affirming the judgment pronounced upon the prisoner.   They agreed with Judge BALCOM that the court of sessions erred in sentencing the prisoner to suffer death on a particular day, but held that such error did not entirely vitiate the sentence.

Judgment affirmed.*

[No written opinions were delivered in the case, except by WRIGHT and BALCOM, JJ.]

* For a convenient reference, we give below the provisions of the Revised Statutes (2 *R. S.* 656, *Part* 4, *Chap.* 1, *Title* 1), " Of crimes punishable with death," *as amended by the act of April* 14, 1860, entitled " An act in relation to capital punishment, and to provide for the more certain punishment of the crime of murder," and also the act of 1860; so that the two statutes may be read together as they now stand:

Lowenberg agt. The People.

*Revised Statutes.*—§ 1. Every person who shall hereafter be convicted, first, of treason against the people of this state; or second, of murder; or third, of arson in the first degree, as those crimes are respectively declared in this title, *shall be punished as herein provided.* § 2. The following acts shall constitute treason against the people of this state: 1. Levying war against the people of this state, within the state: or 2. A combination of two or more persons by force, to usurp the government of the state, or to overturn the same, evidenced by a forcible attempt made within this state to accomplish such purpose: or 3. Adhering to the enemies of this state, while separately engaged in war with a foreign enemy in the cases prescribed in the constitution of the United States, and giving to such enemies aid and comfort in this state or elsewhere. § 3. Whenever any person shall be outlawed upon a conviction for treason, the judgment thereupon shall produce a forfeiture to the people of this state, during the lifetime of such person, and no longer, of every freehold estate in real property, of which such person was seised in his own right, at the time of such treason committed, or at any time thereafter; and of all his goods and chattels. § 4. The killing of a human being, without authority of law, by poison, shooting, stabbing, or any other means, or in any other manner, is either murder, manslaughter, or excusable or justifiable homicide, according to the facts and circumstances of each case. § 5. Such killing, unless it be manslaughter or excusable or justifiable homicide, as hereinafter provided, shall be murder in the following cases: 1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being: 2. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual: 3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony. § 6. Every inhabitant or resident of this state, who shall, by previous appointment or engagement, fight a duel, without the jurisdiction of this state, and in so doing, shall inflict a wound upon his antagonist or any other person, whereof the person thus injured shall die within this state, and every second engaged in such duel, shall be deemed guilty of murder within this state, and may be indicted, tried and convicted in the county where such death shall happen. § 7. Every person indicted under the provisions of the last section may plead a former conviction or acquittal for the same offence, in another state or country; and if such plea be admitted or established, it shall be a bar to any further or other proceeding against such person for the same offence, within this state. § 8. The killing of a master by his servant, or of a husband by his wife, shall not be deemed any other or higher offence than if committed by any other person. § 9. Arson in the first degree, the punishment of which is prescribed in this title, consists in willfully setting fire to, or burning, in the night time, a dwelling-house in which there shall be at the time some human being; and every house, prison or jail, or other edifice, which shall have been usually occupied by persons lodging therein at night, shall be deemed a dwelling-house of any person so lodging therein. § 10. But no warehouse, barn, shed or other outhouse shall be deemed a dwelling-house, or part of a dwelling-house, within the meaning of the last section, unless the same be joined to, immediately connected with, and part of a dwelling-house. § 11. Whenever any convict shall be sentenced to the punishment of death, the court, or a major part thereof, of whom the presiding judge shall always be one, shall make out, sign and deliver to the sheriff of the county, a warrant, stating such conviction and sentence, and appointing the day on which such sentence shall be executed. *(Sections* 12, 13 *and* 14 *are repealed by the act of* 1860.) § 15. No judge, court or officer, other than the governor, shall have any authority to reprieve or

suspend the *execution* of any convict sentenced to the punishment of death, except sheriffs, in the cases and in the manner hereinafter provided. § 16. If, after any convict shall have been sentenced to the punishment of death, he shall become insane, the sheriff of the county, with the concurrence of a justice of the supreme court, or if he be absent from the county, with the concurrence of the county judge of the county in which the conviction was had, may summon a jury of twelve electors to inquire into such insanity, and shall give immediate notice thereof to the district attorney of the county. § 17. The district attorney shall attend such inquiry, and may produce witnesses before the jury; for which purpose he shall have the same power to issue subpœnas as for witnesses to attend a grand jury, and disobedience thereto may be punished by the court of oyer and terminer which shall next sit in such county, in the same manner as disobedience to any process issued by such court. § 18. (*As amended by the act of* 1860.) The inquisition of the jury shall be signed by them and the sheriff. If it be found by such inquisition that such convict is insane, the sheriff *shall convey said convict to the lunatic asylum for insane convicts, there to be kept at the expense of the state until such time as the superintendent thereof shall certify to the governor that said lunatic is sane, and the governor may thereupon issue his warrant for his execution, if he was convicted of murder in the first degree, or may direct that he be imprisoned in one of the state prisons, according to law.* (*Sections* 19, 20, 21, 22, 23, 24, 25 *and* 26 *repealed by the act of* 1860.) § 27. It shall be the duty of the sheriff or under sheriff of the county to be present at such execution, and to invite the presence, by at least three days' previous notice, of the judges, district attorney, clerk and surrogate of said county, together with two physicians and twelve reputable citizens, to be selected by said sheriff or under sheriff. And the said sheriff or under sheriff shall, at the request of the criminal, permit such minister or ministers of the gospel, not exceeding two, as said criminal shall name, and any of the immediate relatives of said criminal, to attend and be present at such execution; and also, such officers of the prison, deputies and constables as said sheriff or under sheriff shall deem expedient to have present; but no other persons than those herein mentioned shall be permitted to be present at such execution, nor shall any person under age be allowed to witness the same. § 28. The sheriff or under sheriff and judges attending such execution, shall prepare and sign officially a certificate setting forth the time and place thereof, and that such criminal was then and there executed in conformity to the sentence of the court and the provisions of this act; and shall procure to said certificate the signatures of the other public officers and persons, not relatives of the criminal, who witnessed such execution; and the sheriff or under sheriff shall cause such certificate to be filed in the office of the clerk of said county, and a copy thereof to be published in the state paper, and in one newspaper, if any is printed in said county. (*Section* 29 *repealed by the act of* 1860.)

*Act of April* 14, 1860.—§ 1. No crime hereafter committed, except treason, and murder in the first degree, shall be punishable with death in the state of New York. § 2. All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or the attempt to perpetrate any arson, rape, robbery or burglary, or in any attempt to escape from imprisonment, shall be deemed murder in the first degree; and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person indicted for murder in either degree shall be tried, shall, if they find such person guilty thereof, find in their verdict whether it be under the first or second degree. § 3. Upon any indictment against any person for murder in the first degree, it shall and may be lawful

for the jury to find such accused person guilty of murder in the second degree. § 4. When any person shall be convicted of any crime punishable with death, and sentenced to suffer such punishment, he shall at the same time be sentenced to confinement at hard labor in the state prison until such punishment of death shall be inflicted. The presiding judge of the court at which such conviction shall have taken place, shall immediately thereupon transmit to the governor of the state, by mail, a statement of such conviction and sentence, with the notes of testimony taken by such judge on the trial. § 5. No person so sentenced or imprisoned shall be executed in pursuance of such sentence within one year from the day on which such sentence of death shall be passed, nor until the whole record of the proceedings shall be certified by the clerk of the court in which the conviction was had, under the seal thereof, to the governor of the state, nor until a warrant shall be issued by the governor, under the great seal of the state, directed to the sheriff of the county in which the state prison may be situated, commanding the said sentence of death to be carried into execution. § 6. Every person convicted of murder in the second degree shall be sentenced to undergo imprisonment in one of the state prisons, and be kept in confinement at hard labor for his or her natural life. (*Section 7 amends* § 1 *of the Revised Statutes as above, and section* 8 *amends* § 18 *of the Revised Statutes as above.*) § 9. The provisions of this act for the punishment of murder in the first degree shall apply to the crime of treason; and the punishment of murder in the second degree, as herein provided, shall apply to all crimes now punishable with death, except as herein provided. § 10. All persons now under sentence of death in this state, or convicted of murder and awaiting sentence, shall be punished as if convicted of murder in the first degree under this act. (*Section* 11 *repeals sections* 12, 13, 14, 19, 20, 21, 22, 23, 24, 25, 26 *and* 29 *of the Revised Statutes, as above stated.*)